Filed 8/28/20  P. v. Horn CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TROY HORN,<br><br>    Defendant and Appellant. | D075815<br><br><br>(Super. Ct. No. SCD277731) |


APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting, Daniel J. Hilton and Matthew Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Troy Horn guilty of two counts of resisting an executive officer through force or violence (Pen. Code, § 69; counts 2 & 3),[1] one count of resisting a peace officer (§ 148, subd. (a)(1); count 1), and one count of battery (§ 242; count 4). Horn admitted a prior prison term (former § 667.5, subd. (b)), which the trial court later struck. The trial court sentenced Horn to a two-year prison term.

Horn contends (1) the trial court prejudicially erred by failing to sua sponte instruct the jury on lesser included offenses in counts 2 and 3, which alleged that Horn resisted an executive officer through force or violence (§ 69); (2) because the conviction for resisting a peace officer (§ 148, subd. (a)(1)) in count 1 is a lesser included offense of resisting an executive officer with force or violence (§ 69) in count 2, the conviction on count 1 must be reversed; and (3) the trial court prejudicially erred in admitting certain expert testimony on officer use of force. Horn also requests that we review the materials from the personnel files of two police officers to determine whether the trial court properly determined that the files did not contain any documents that should be turned over to the defense.

We conclude that the trial court prejudicially erred in failing to sua sponte instruct the jury with the lesser included offense of simple assault (§ 240) in counts 2 and 3. We will accordingly reverse the convictions in counts 2 and 3, giving the People the option to either retry Horn in counts 2 and 3 or accept a reduction to convictions for simple assault. Because of our reversal of counts 2 and 3, we find it unnecessary to resolve the other issues that Horn raises. Further, we have reviewed the officers' personnel files and

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

conclude that the trial court did not abuse its discretion in determining that they contained no discoverable documents.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of July 23, 2018, 28-year-old Michael S. called 911 to report that Horn, who was his mother's boyfriend, had attempted to choke him and that Horn had pushed his mother. During the course of the 911 call, Michael S. and his mother drove from their apartment to a nearby gas station to escape from Horn. A short time later, Michael S. made a second call to 911 to report that he and his mother were no longer at the gas station. Horn had come after them in his car, and they were now driving away from Horn, who was chasing and tailgating them. Responding officers from the San Diego Police Department, including Officer David Norris and Officer Peter Belanger, located Michael S. and his mother as they drove back to their apartment. While Michael S. spoke with the officers, Horn drove by the scene, and Michael S. pointed out Horn to the officers. The officers signaled for Horn to stop, but he kept driving.

Officer Norris and Officer Belanger got back into their patrol vehicle to follow Horn's car. The officers quickly lost sight of Horn's car, but they turned into a shopping center parking lot that they suspected Horn had entered. The officers noticed Horn's parked car and saw Horn walking away. When the officers turned their patrol vehicle to drive toward Horn, he started running away from them, and they yelled at him to stop. According to Officer Belanger, the officers activated the emergency lights and siren on their patrol vehicle. Horn ran through the parking lot and then across a major road, which was divided by a median. At some point while Horn was running from the officers he stated, "You're going to have to kill me."

While the officers drove their patrol vehicle to Horn's location on the other side of the divided road, Horn climbed up a steep roadside embankment. Horn apparently was not able to climb over the crest of the embankment because of an obstacle at the top, and he walked back down to the street.

As the officers pulled up in their patrol vehicle next to Horn, he had reached the sidewalk at the bottom of the embankment. Horn's hands were raised, and he was holding a cell phone. The officers' body-worn cameras recorded the subsequent interaction between Horn and the officers.[2]

The officers exited their vehicle with their firearms drawn and ordered Horn to get on the ground and onto his stomach. Officers Norris and Belanger both testified that they wanted Horn on his stomach so that they could handcuff him to render the scene safe. According to both officers, the preferred method of handcuffing someone who may pose a danger is to get the person on his or her stomach because in that position the person cannot reach for weapons.

Horn did not get on the ground, but instead remained standing with his arms up, stating several times, "I can't breathe," while appearing to be trying to catch his breath after running and climbing the embankment. Horn also stated, "I ain't got nothing." The officers continued to yell for Horn to get on the ground on his stomach while Horn continued to say he couldn't breathe. Officer Belanger holstered his firearm and took out his Taser. Officer Belanger told Horn that he was going to get shot with the Taser if he did not get to his stomach.

---

[2]     Officer Norris's body-worn camera fell off early in the officers' physical struggle with Horn and was pointed at the sky until after Horn was handcuffed and taken into custody. Officer Belanger's body-worn camera showed the entire incident.

4

Approximately 23 seconds after the officers started to order him to get on the ground, Horn partially complied by going down to his knees with his hands still raised. The officers yelled at Horn to get all the way to the ground, but Horn delayed slightly in doing so. After Horn had been on his knees for approximately five seconds, the officers grabbed Horn's back and shoulders and pushed Horn to his stomach, with each officer putting a knee on Horn's back. Once on the ground, Horn stated, "I can't breathe. I've got asthma." Officer Norris said, "I don't care. Get your hands behind your back."

Horn was compliant for a few seconds while the officers tried to bring Horn's hands behind his back, but then Horn started to struggle against the officers, seeming to be panicked about not being able to breathe. Officer Norris applied a carotid restraint to Horn's neck to try to make Horn temporarily lose consciousness so the officers could get Horn under control and handcuff him, but the carotid restraint was not successful.[3]

While saying he could not breathe in a frantic manner, Horn managed to push up and turn himself onto his back and then get to his feet and run a couple steps. The officers grabbed onto Horn and struggled to bring Horn back to the ground and onto his stomach. During the struggle, which lasted approximately one minute, the officers tried several techniques to get control over Horn, including tackling Horn's back and neck, applying distractionary blows in the form of punches to his face, trying to put weight on Horn's torso, and making other failed attempts to apply a carotid restraint. Although the video from the body-worn cameras does not clearly show all of the officers'

---

[3] Officer Norris testified that a carotid restraint is a neckhold that temporarily disrupts the flow of blood to the brain to render the person unconscious for approximately five seconds, during which time the officer can get handcuffs on the person.

distractionary blows to Horn's body, Officer Belanger confirmed during his testimony that he punched Horn's face three times and then another three times, and Officer Norris used his elbow to hit Horn's face at least once. During the struggle, Horn repeatedly tried to get away from the officers and off of the ground, using his body weight to push against the officers when trying to rise up and free himself, but Horn did not attempt to strike the officers.

The officers eventually got Horn onto his stomach and were bringing Horn's hands behind his back while applying pressure to Horn's head and torso against the ground. Horn again seemed panicked about not being able to breathe and pushed himself part of the way up onto his arms. The officers were able to get Horn back down all the way to his stomach and finally succeeded in handcuffing Horn approximately two minutes after the struggle began. During the entire incident, from the time the officers arrived to the time that Horn was handcuffed and brought to a seated position, Horn stated he could not breathe 22 times.

After he was handcuffed, Horn was searched and taken to sit inside a patrol vehicle. Paramedics were called to evaluate Horn, and he was taken to the hospital for clearance to book him into jail. Horn had a contusion and abrasion to his forehead and abrasions on his knees. Officer Norris incurred a fracture to his pinky finger during the incident, which did not prevent him from continuing to perform his duties.

An amended information charged Horn with one count of resisting a peace officer, causing serious bodily injury as to Officer Norris (§ 148.10, subd. (a)), two counts of resisting an executive officer as to both Officer Norris and Officer Belanger (§ 69), one count of misdemeanor battery as to Michael S. (§ 242), and one count of misdemeanor reckless driving (Veh. Code,

§ 23103, subd. (a)). It was also alleged that Horn incurred a prior prison term. (Former § 667.5, subd. (b).)

During the trial testimony of Officer Norris and Officer Belanger, the prosecutor played for the jury the recordings from those officers' body-worn cameras. The prosecutor also presented expert testimony from Sergeant Detective Kenneth Impellizeri of the San Diego Police Department, who is the chair of the department's use-of-force committee. Sergeant Impellizeri described his committee's role in developing and updating the department's use-of-force policies. He also described the department's use-of-force matrix that describes acceptable levels of force depending on the level of resistance posed by a subject. Further, based on the trial court's rulings about the permissible scope of Sergeant Impellizeri's testimony, the prosecutor described hypothetical situations mirroring the facts of this case and asked Sergeant Impellizeri to opine on how an officer would be trained to respond in those hypothetical situations.

After the People rested, the trial court granted Horn's motion to dismiss the reckless driving count pursuant to section 1118.1.

During closing argument, one of defense counsel's main contentions was that the jury should not find Horn guilty of any of the counts requiring that the officers were lawfully performing their duties (i.e., counts 1, 2, and 3) because the officers used excessive force against Horn.

The jury found Horn guilty of resisting an executive officer in count 2 (as to Officer Norris) and count 3 (as to Officer Belanger) (§ 69), and of misdemeanor battery (against Michael S.) in count 4 (§ 242). On count 1, which alleged resisting a peace officer, causing serious bodily injury to Officer Norris (§ 148.10, subd. (a)), the jury found Horn guilty of the lesser included offense of resisting a peace officer (§ 148, subd. (a)(1)), apparently finding

7

that the fracture to Officer Norris's pinky finger did not constitute serious bodily injury. Horn admitted a prior prison term.

At sentencing, the trial court struck Horn's prior prison term, and it sentenced Horn to serve a term of two years in prison. Specifically, the trial court selected the conviction in count 2 for resisting an executive officer (§ 69) as the principal term, and ordered that the sentences for each of the other counts be served concurrently.

## II.

## DISCUSSION

A. *Horn's Contention That the Trial Court Prejudicially Erred by Failing to Instruct on Lesser Included Offenses in Counts 2 and 3*

We first consider Horn's contention that the trial court prejudicially erred by not instructing the jury, sua sponte, with lesser included offenses for the crime of resisting an executive officer through force or violence (§ 69) as alleged in counts 2 and 3.

1. *Relevant Background*

As we have explained, the amended information charged Horn with two counts of resisting an executive officer in violation of section 69. Count 2 was based on resistance to Officer Norris, and count 3 was based on resistance to Officer Belanger.

Section 69 provides, "(a) Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty" is guilty of a crime. (§ 69, subd. (a).) As courts have observed, "[t]he statute sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence

8

an officer in the performance of his or her duty." (*In re Manuel G.* (1997) 16 Cal.4th 805, 814 (*In re Manuel G.*).) "The two ways of violating section 69 have been called 'attempting to deter' and 'actually resisting an officer.'" (*People v. Lacefield* (2007) 157 Cal.App.4th 249, 255.) "The first way of violating section 69 'encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such a duty at some time *in the future.*' . . . The actual use of force or violence is not required." (*People v. Smith* (2013) 57 Cal.4th 232, 240 (*Smith*), citation omitted.) "The second way of violating section 69 expressly requires that the defendant resist the officer 'by the use of force or violence,' and it further requires that the officer was acting lawfully at the time of the offense." (*Smith*, at p. 241.) "An officer using excessive force is not acting lawfully." (*People v. Sibrian* (2016) 3 Cal.App.5th 127, 133 (*Sibrian*).) Accordingly, as the jury was instructed pursuant to CALCRIM No. 2652, "A peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting someone or using unreasonable or excessive force in his duties."[4]

Here, the amended information alleged both theories of resisting an executive officer in counts 2 and 3. However, when discussing jury instructions, the prosecutor observed that no evidence had been presented at

---

[4] This " 'rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful.'" (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 816; see also *People v. Cruz* (2008) 44 Cal.4th 636, 673.) Thus, "where excessive force is used in making what otherwise is a technically lawful arrest, the arrest becomes unlawful and a defendant may not be convicted of an offense which requires the officer to be engaged in the performance of his duties [citations]." (*People v. White* (1980) 101 Cal.App.3d 161, 164.)

trial to support a violation of section 69 under the theory that Horn attempted to deter the officers by threats or violence. Accordingly, the trial court agreed that the jury should be instructed solely with the theory that Horn violated section 69 by actually resisting an officer through force or violence. Specifically, the jury was instructed, "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant unlawfully used force or violence to resist an executive officer; [¶] 2. When the defendant acted, the officer was performing his lawful duty; [¶] AND, [¶] 3. When the defendant acted, he knew the executive officer was performing his duty." Neither defense counsel nor the prosecutor requested that the jury be instructed with any lesser included offenses to section 69, and the trial court did not sua sponte offer any such instruction.[5]

2.    *Applicable Legal Principles for Lesser Included Offenses*

Horn contends that the trial court should have sua sponte instructed the jury on lesser included offenses to section 69. Specifically, he contends that when, as here, section 69 is alleged to have been violated by the defendant resisting an executive officer through force or violence, the lesser

---

[5]    It appears that the parties did not request the jury be instructed with lesser included offenses to section 69 because, when briefly discussing the issue of lesser included offense with the trial court at the outset of the conference on jury instructions, the parties were focused on the part of section 69 that criminalizes using threats or violence to deter an executive officer from performing a duty rather than the part of section 69 that criminalizes resisting an executive officer through force or violence. The issue of lesser included offenses was not revisited when, later in the discussion, it was established that the jury would be instructed on the theory that Horn violated section 69 counts by resisting an executive officer through force or violence.

included offenses are (1) simple assault (§ 240),[6] (2) battery (§ 242),[7] and (3) resisting a peace officer (§ 148, subd. (a)(1)).[8]

"A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' . . . Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense. . . . 'The rule's purpose is . . . to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence.' . . . In light of this purpose, the court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of' the lesser offense." (*People v. Shockley* (2013) 58 Cal.4th 400, 403-404, citations omitted (*Shockley*).) In determining whether substantial evidence supports

---

[6] Simple assault is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "[A]ssault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790.)

[7] Battery is defined as "any willful and unlawful use of force or violence upon the person of another." (§ 242.)

[8] Section 148, subdivision (a)(1) makes it a crime to "willfully resist[], delay[], or obstruct[] any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . ." (§ 148, subd. (a)(1).) A defendant may be convicted under this provision "even if he did not use force or violence to effectuate th[e] resistance." (*People v. Brown* (2016) 245 Cal.App.4th 140, 151 (*Brown*).)

11

instructing with a lesser included offense, the court should consider only the "legal sufficiency" of the evidence, not its weight or the credibility of the witnesses who presented the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 177 (*Breverman*).) "On appeal, we independently review whether a trial court erroneously failed to instruct on a lesser included offense." (*People v. Trujeque* (2015) 61 Cal.4th 227, 271.)

      3.    *Under the Accusatory Pleading Test the Crimes of Simple Assault and Resisting a Peace Officer Are Lesser Included Offenses of the Counts Alleging That Horn Resisted an Executive Officer Through Force or Violence*

The initial question in determining whether the trial court erred in failing to sua sponte instruct with the lesser included offenses is whether simple assault, battery and resisting a peace officer (§ 148, subd. (a)(1)) are lesser included offenses of the counts alleging that Horn resisted an executive officer through force or violence (§ 69).[9] Courts "have applied two tests in determining whether an uncharged offense is necessarily included within a charged offense: the 'elements' test and the 'accusatory pleading' test. Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the

---

[9]    The People's respondent's brief does not take a position on whether simple assault, battery and resisting a peace officer (§ 148, subd. (a)(1)) are lesser included offenses of the charge alleging that Horn resisted an executive officer through force or violence (§ 69). Instead, the respondent's brief argues that regardless of whether those crimes are lesser included offenses of resisting an executive officer by force or violence as pled in this case, the trial court was not required to instruct on them due to the evidence presented at trial.

12

lesser offense, the latter is necessarily included in the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227-1228 (*Reed*).)

Here, Horn does not attempt to rely on the elements test, as he acknowledges that a defendant can violate section 69 *by making a threat of future harm* in order to deter an officer without also necessarily committing simple assault, battery or resisting a peace officer. (See *Smith*, *supra*, 57 Cal.4th at p. 240 [resisting a peace officer in violation of "[s]ection 148(a)(1) is *not* a lesser included offense of section 69 based on the statutory elements of each crime," as "it is possible to violate section 69 . . . by attempting, through threat or violence, to deter or prevent an executive officer from performing a duty—without also violating section 148(a)(1)"].) However, Horn argues that under the accusatory pleading test the crimes of simple assault, battery and resisting a peace officer are all lesser included offenses of resisting an officer through force or violence in violation of section 69.

> a.   *Resisting a Peace Officer Is a Lesser Included Offense of Resisting an Executive Officer Through Force or Violence*

With respect to the offense of resisting a peace officer (§ 148, subd. (a)(1)), Horn points to our Supreme Court's holding in *Smith,* which established that where, as here, an accusatory pleading alleges *both* ways of violating section 69 (i.e., attempting to deter an officer with threats or violence *and* actually resisting an executive officer through force or violence), the crime of resisting a peace officer (§ 148, subd. (a)(1)) is a lesser included offense of section 69 under the accusatory pleading test. (*Smith*, *supra*, 57 Cal.4th at pp. 242-245.) *Smith* requires us to conclude that because the section 69 charge against Horn alleges both ways of violating section 69, resisting a peace officer (§ 148, subd. (a)(1)) is a lesser included offense of section 69 based on the accusatory pleading filed in this case.

13

　　　　b.　　*Simple Assault Is a Lesser Included Offense of Resisting an Executive Officer Through Force or Violence, but Battery Is Not*

To establish that simple assault and battery are lesser included offense of section 69 under the accusatory pleading test, Horn relies on *Brown*, *supra*, 245 Cal.App.4th at page 153.  Applying our Supreme Court's analysis in *Smith* to the question of whether simple assault is a lesser included offense of section 69, *Brown* concluded that simple assault is a necessarily included lesser offense of section 69 if the accusatory pleading alleges that defendant resisted an officer with force or violence.  (*Id*. at p. 153 [as "it is not possible to violate the statute in the second way [i.e., resisting an executive officer through force or violence] without committing an assault, we conclude that assault was necessarily a lesser included offense of section 69 under the accusatory pleading test"].)

*Brown* supports Horn's contention that simple assault is a lesser included offense of section 69 when the defendant is alleged to have violated section 69 by "knowingly resist[ing], by the use of force or violence, the officer, in the performance of his or her duty."  (§ 69, subd. (a).)  The resistance prong of a section 69 "offense involves 'force or violence' by the defendant *against* an officer engaged in his duties at the time of the defendant's resistance."  (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 985, italics added (*Carrasco*).)  A defendant who commits a violation of section 69 by resisting an executive officer through force or violence therefore necessarily commits simple assault.

However, we do not agree that battery is a necessarily included offense of resisting an executive officer through force or violence.  *Brown* made no such holding, as it concerned only the lesser included offense of simple assault and did not address battery.  (*Brown*, *supra*, 245 Cal.App.4th at

14

pp. 152-153.)  Battery is defined as "any willful and unlawful use of force or violence upon the person of another" (§ 242), but requires that a *touching* actually occur.  (*Shockley, supra*, 58 Cal.4th at p. 404.)  "An assault is an incipient or inchoate battery; a battery is a consummated assault."  (*People v. Colantuono* (1994) 7 Cal.4th 206, 216.)  Although "[e]very completed battery includes an assault" (*People v. Yeats* (1977) 66 Cal.App.3d 874, 878), it does not follow that every assault *necessarily* turns into a battery.  This is because the defendant may not actually succeed in *touching* the target of the offense.

"[A] lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, *such that the greater cannot be committed without also committing the lesser*."  (*People v. Birks* (1998) 19 Cal.4th 108, 117, italics added.)  Because the offense of battery requires that the defendant be *successful* in touching the target of the force or violence (§ 242), a defendant can direct force or violence against an executive officer in violation of section 69 without actually committing a battery.  A simple example illustrates this point.  A defendant who resists an executive officer by throwing rocks at the officer plainly commits both a simple assault against the officer and the offense of resisting an executive officer through force or violence (§ 69).  However, if the defendant's aim is poor or he is too far away to reach his target, and the rocks therefore do not actually end up *hitting* the officer, the defendant has not *also* committed battery.  Because a person can resist an executive officer through force or violence without also necessarily *touching* the executive officer in a harmful or offensive manner, battery is not a lesser included offense of resisting an executive officer through force or violence in violation of section 69.

15

4.    *Based on the Evidence at Trial, the Jury Should Have Been Instructed on the Lesser Included Offense of Simple Assault, but Not on the Lesser Included Offense of Resisting a Peace Officer*

Having concluded that both simple assault and resisting a peace officer (§ 148, subd. (a)(1)) are lesser included offenses of resisting an executive officer through force or violence as charged in this case (§ 69), we proceed to determine whether substantial evidence at trial required that the trial court instruct on either of those lesser included offenses.  Specifically, we ask whether "a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense."  (*Shockley*, *supra*, 58 Cal.4th at p. 403.)

a.    *Substantial Evidence Did Not Support Instructing with Resisting a  Peace Officer as a Lesser Included Offense*

We turn first to the lesser included offense of resisting a peace officer (§ 148, subd. (a)(1)).  Section 148, subdivision (a)(1) makes it a crime to "willfully resist[], delay[], or obstruct[] any  . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . ."  (§ 148, subd. (a)(1).)  The most significant difference between the lesser offense of resisting a peace officer (§ 148, subd. (a)(1)) and the greater offense of resisting an executive officer through force or violence (§ 69), is that a defendant may be convicted of the lesser offense "even if he did not use force or violence to effectuate th[e] resistance."  (*Brown*, *supra*, 245 Cal.App.4th at p. 151.)  Accordingly, the trial court in this case would have been required to instruct on the lesser offense of resisting a peace officer in counts 2 and 3 if substantial evidence supported a finding that Horn did not use force or violence when he resisted Officer Norris and Officer Belanger.

The evidence of Horn's conduct during the struggle with the officers was presented to the jury through the videos from the officers' body-worn cameras and the officers' testimony describing the incident.  That evidence is

16

uncontradicted in showing that Horn physically struggled against the officers for a prolonged period after they initially took him down to the ground. While the officers were on top of Horn trying to get Horn's hands behind his back, Horn used his body weight to throw the officers off of him, to turn himself over, and then to stand up and try to run away. The officers and Horn then struggled for approximately 25 seconds while the officers tried to tackle Horn and take him back down to the ground. During that time, Horn used his strength to try to resist the officers' attempt to control him. Even after the officers got Horn back on the ground, he continued to struggle against them, and at one point used his body weight to push back off of his stomach while the officers were on top of him.

Although section 69 does not define the type of resistance that constitutes force or violence, case law provides clarification. In *Carrasco, supra*, 163 Cal.App.4th at pages 985-986, the defendant had to be physically taken to the ground, and he then kicked, squirmed and resisted as the officers attempted to gain control of his torso, arms and hands in order to handcuff him. As *Carrasco* explained, "Appellant had to be physically taken to the ground by Detective McGuffin because he refused to comply with Deputy Macias's repeated orders to remove his hand from his duffle bag. Appellant failed to comply with several officers' repeated orders to relax and Macias's orders to 'stop resisting.' He continued to struggle with Macias and McGuffin, as well as several other officers. Macias attempted to control appellant's torso, while three other detectives attempted to control appellant's arms. Appellant placed his hands and arms underneath his body, was 'yelling, kicking, [and] cussing,' and said he would 'kick [the officers'] ass[es].' Appellant continued to squirm and refused to give his right hand to Macias. Appellant did not comply until after Lieutenant Rothans

17

administered the use of pepper spray." (*Ibid*.)  *Carrasco* concluded that no substantial evidence supported an instruction on the lesser included offense of resisting a peace officer (§ 148, subd. (a)(1)) because "the jury would have had no rational basis to conclude appellant wrestled with the officers . . . but the struggle did not involve force or violence." (*Carrasco*, at p. 986.)

Following *Carrasco*, this court has explained that "force used by a defendant *in resisting* an officer's attempt to restrain and arrest the defendant is sufficient to support a conviction." (*People v. Bernal* (2013) 222 Cal.App.4th 512, 519.)  In *Bernal,* an officer was behind the defendant attempting to handcuff him when the officer felt the defendant's hands push against him as the defendant began running. (*Id*. at p. 515.)  The officer grabbed the defendant by the waist with both hands, but the defendant kept running and dragging the officer with him, jerking his hips in an effort to throw off the officer. (*Ibid*.)  The defendant dragged the officer about eight to 10 yards before they both fell to the ground. (*Ibid.)*  In *Bernal* we concluded that evidence of the defendant's running from the officer while the officer was holding onto him and trying to throw the officer off by jerking his hips was sufficient to support the defendant's conviction under section 69 because the defendant made a "forceful" attempt to escape from the officer. (*Id*. at p. 519.)

Here, based on the applicable case law, the uncontradicted evidence allows only one conclusion as to whether Horn used force or violence in resisting Officer Norris and Officer Belanger.  Because Horn used his strength to resist the officers as they tried to handcuff him, including pushing them off of him, trying to run away and resisting their attempts to tackle him to the ground, Horn used force or violence as required for a conviction under section 69.  The substantial evidence at trial therefore does not support a

finding " 'that an element of the charged offense is missing [i.e., use of force or violence], but that the accused is guilty of' the lesser offense" of resisting *without* force or violence in violation of section 148, subdivision (a)(1)). (*Shockley*, *supra*, 58 Cal.4th at p. 404.)  The trial court was not required to instruct on the lesser included offense of resisting a peace officer in counts 2 and 3.

> b.    *Substantial Evidence Supported an Instruction on the Lesser Included Offense of Simple Assault*

We next consider whether the trial court was required to give an instruction on the lesser included offense of simple assault in counts 2 and 3 because substantial evidence would support a finding that Horn committed only the lesser included offense.

To support his contention that he could have been found guilty of the lesser included offense of simple assault but not guilty of resisting an executive officer through force or violence (§ 69), Horn relies on the well-established principle that a defendant does not violate section 69 when he or she resists an executive officer who is using excessive force.

As we have explained, a defendant violates section 69 only if the officer was acting lawfully at the time of the offense.  (*Smith*, *supra*, 57 Cal.4th at p. 241.)  "An officer using excessive force is not acting lawfully," and thus a defendant who resists such force cannot be found guilty under section 69. (*Sibrian, supra,* 3 Cal.App.5th at p. 133.)  However, "even if the officer is not acting within the scope of his duties because of his use of excessive force, the defendant may still be guilty of simple battery [or simple assault] if he responds with excessive force." (*People v. Castain* (1981) 122 Cal.App.3d 138, 145.)  "If the use of force is *necessary* to resist excessive force used by the officers then the application of force is justified and the defendant is guilty of no crime.  However, if the use of force is *not justified* in self[-]defense then the

19

defendant is guilty of at least simple battery, or simple assault." (*People v. Jones* (1981) 119 Cal.App.3d 749, 756; see also *Brown, supra*, 245 Cal.App.4th at p. 154 [the trial court should have instructed with assault as a lesser included offense because if the jury found that the defendant "used unreasonable force" in resisting the officer's excessive force, "it would have supported a conviction for 'simple assault rather than forcible resistance to lawful police conduct under section 69' "].)

Here, Horn contends that an instruction on the lesser included offense of simple assault was warranted because substantial evidence supports a finding that (1) the officers used excessive force against Horn, but (2) Horn also used unreasonable force against the officers when resisting that excessive force. As we will explain, we conclude that Horn's contention has merit.

Turning first to the issue of whether substantial evidence could support a finding that the officers used excessive force against Horn, Supreme Court case law sets forth the standards for determining whether officers have used excessive force. The inquiry is whether the officers' actions are " 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (*Graham v. Connor* (1989) 490 U.S. 386, 397.) "[I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (*Id*. at p. 396.) Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." (*Ibid*.) With respect to excessive force, the jury was

instructed with CALCRIM No. 2670 that "[a] peace officer may use *reasonable* force to arrest or detain someone, to prevent escape, to overcome resistance, or in self-defense." (Italics added.)

Horn summarizes the evidence in support of an excessive force finding as follows: "The evidence indicates the jury could have found that once [Horn] came down the embankment he was complying and it was not until after the officers grabbed him and applied their full body weight to get him to the ground that [Horn] struggled with the officers. [Horn] had his hands up and got down on his knees when the officers told him to get on the ground which supports [Horn] was complying. The video shows [Horn] gasping for air. The jury could have reasonably inferred that [Horn] legitimately had a hard time breathing after he had just run through a parking lot and up an embankment and the officers' treatment of [Horn] was unreasonable. The jury could have believed that it was unreasonable for both officers to strike [Horn] in the head three times. Furthermore, the jury could have thought it was unreasonable for Belanger to strike [Horn] in the head a second time. The jury could have found it was excessive force for Norris to apply pressure with his knee to [Horn's] back or attempt a carotid restraint when [Horn] couldn't breathe. Moreover, the jury could have believed it was excessive to attempt to apply a second carotid restraint after the first one was unsuccessful."

Although reasonable people could certainly disagree on whether the officers acted with excessive force, the evidence at trial was sufficient to support a finding that the officers used more force than was reasonable against a man who stated that he was unable to breathe. If jurors viewing the videos from the body-worn cameras concluded that Horn was genuinely having difficulty breathing while trying to surrender to the officers, the jurors

may have concluded that the officers acted unreasonably in response to Horn's repeated statements that he could not breathe when they forced him to his stomach, put weight on his back, attempted to apply a carotid restraint and then repeatedly struck him after he panicked about being put in a position where he could not breathe. Therefore, we conclude that substantial evidence would support a finding that the officers used excessive force.

Turning to the second issue of whether substantial evidence could support a finding that Horn reacted with unreasonable force in response to any excessive force used by the officers, we conclude that the evidence could support such a finding. Even if the jury found that the officers used excessive force against Horn, Horn repeatedly used force in trying to escape from the officers. Specifically, Horn struggled with the officers over the course of approximately two minutes, including throwing the officers off his back, trying to run away, and then once again trying to rise up after he was brought back to the ground. Accordingly, a reasonable juror could conclude that although the officers may have used excessive force against Horn when he was having difficulty breathing and trying to surrender, Horn overreacted to the situation and struggled against the officers more than was necessary to address his concern with not being able to breathe.

Accordingly, as substantial evidence could support a finding both that (1) the officers acted with excessive force; and (2) Horn reacted to the excessive force by using unreasonable force himself, a jury could have found Horn not guilty of resisting an officer through force or violence (§ 69) but guilty of simple assault. The trial court thus erred in not sua sponte instructing the jury with the lesser included offense of simple assault for count 2 and count 3.

22

5.    *The Error in Failing to Instruct in Counts 2 and 3 With the Lesser Included Offense of Simple Assault Was Prejudicial*

Although we have concluded that the trial court erred by not instructing on the lesser included offense of simple assault in counts 2 and 3, such an error requires reversal only if it was prejudicial.

"[T]he failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility." (*Breverman*, *supra*, 19 Cal.4th at p. 165.) Accordingly, "[a] conviction of the charged offense may be reversed . . . only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*Breverman*, at p. 178.) "Such posttrial review focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Id.* at p. 177.) "[I]n assessing prejudice, 'it does not matter that the jury chose to convict the defendant of the greater offense over acquittal or that the defendant was convicted of the greater offense on sufficient evidence.' [Citation.] To hold otherwise would undermine the very purpose of the sua sponte rule." (*Brown, supra,* 245 Cal.App.4th at p. 155.)

The People argue that the error was not prejudicial, because the jury necessarily found in count 1 that Officer Norris did not act with excessive force. " ' "[I]n some circumstances it is possible to determine that although an instruction on a lesser included offense was erroneously omitted, the

factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury." ' " (*People v. Elliot* (2005) 37 Cal.4th 453, 475; see also *People v. Campbell* (2015) 233 Cal.App.4th 148, 167 ["a jury's determination on a factual issue under other instructions is relevant to determining whether an instructional error is harmless"].) Relying on this principle, the People argue that even had the jury been instructed with simple assault as a lesser included offense in counts 2 and 3, the verdict in count 1 establishes that the jury would not have found the officers used excessive force when deciding counts 2 and 3, and thus would not have found Horn guilty of the lesser included offense of simple assault.

Specifically, with respect to the lesser included offense of resisting a peace officer in count 1 (§ 148, subd. (a)(1)), the jury was instructed that to convict Horn it had to find that Officer Norris "was a peace officer *lawfully* performing or attempting to perform his duties as a peace officer." (Italics added.) The jury was further instructed that "[a] peace officer is not lawfully performing his duties if he is . . . using unreasonable or excessive force in his duties." (Italics omitted.) Therefore, as the People point out, in convicting Horn of resisting a peace officer in count 1, the jury necessarily found that Officer Norris was *not* using excessive force. Looking to the verdict in count 1 to inform how the jury would have decided counts 2 and 3 had it been instructed with simple assault as a lesser included offense, the People argue

24

that the jury would have resolved the factual issue of the officers' use of excessive force the same way in deciding counts 2 and 3 as in count 1.

Horn responds that the People's argument fails because "[t]he jury could have based the conviction in count 1 on [Horn] running from the officers while the officers were performing their lawful duty, however, the jury could have based counts 2 and 3 on different aspects of the encounter to find that the officers used excessive force once appellant surrendered and that appellant responded with unreasonable force." As we will explain, Horn's analysis has merit.[10]

"The longstanding rule in California and other jurisdictions is that a defendant cannot be convicted of an offense against a peace officer ' "engaged in . . . the performance of . . . [his or her] duties" ' unless the officer was acting lawfully *at the time* the offense against the officer was committed." (*In re Manuel G., supra,* 16 Cal.4th at p. 815, first italics omitted, second italics added.) Thus, "[i]f a jury finds that an officer is acting lawfully *at the time* a defendant resists, obstructs, or delays that officer, there is no bar to the defendant's conviction of section 148(a)(1), even if an officer *subsequently* uses

---

[10] The People's argument also suffers from another weakness that Horn does not point out in his reply brief. Count 1 was expressly based on Horn's resistance toward Officer Norris. Thus, the jury's verdict in count 1 does not indicate how the jury would have resolved the issue of whether Officer Belanger used excessive force, had it been given the option, in count 3, to convict Horn of the lesser included offense of assault against Officer Belanger. Significantly, the two officers engaged in different actions during the incident, with Officer Belanger admitting to punching Horn in the face at least six times. Thus, even if the jury were to decide that Officer Norris did not use excessive force, the jury could focus specifically on Officer Belanger's actions to reach a different conclusion as to him.

excessive force on the defendant." (*People v. Williams* (2018) 26 Cal.App.5th 71, 87, italics added.)[11]

The jury instructions identified four distinct instances of resistance that the jury could rely upon to convict Horn in count 1. Specifically, the instructions stated, "The People allege that the defendant resisted[] David Norris by doing the following: running from the officers, refusing to lie on his stomach, failing to place his hands behind his back to submit to handcuffing, rising up from the ground contrary to orders of the police. You may not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of the alleged acts of resisting a peace officer who was lawfully performing his duties, and you all agree on which act he committed."[12]

---

[11]    Consistent with the principle that it is important to focus on the lawfulness of the officer's actions *at the time* the defendant was resisting, the jury was instructed with respect to section 69 that it must find *"[w]hen the defendant acted*, the officer was performing his lawful duty." (Italics added.)

[12]    Moreover, defense counsel stressed during closing argument that the People alleged four different acts of resistance, and there was a break between Horn's first act of running from the officers and the subsequent three acts of resistance, so the jury should view the acts separately. "And they allege four different acts: run from officers, refusing to lie on his stomach, failing to place his hands behind his back and submit to handcuffing, and rising up from the ground contrary to the orders of the police. So I want to break that down for you because, based on what you reviewed and what the evidence showed based on the video, there was a break in what happened. And that break was between the time when the officers were following Mr. Horn and he was running away from them and the time that they had to go down a street, turn all the way around, the U-turn, and by the time that they came back, Mr. Horn was coming down from an embankment with both hands in the air, not reaching towards his pockets, and then we have this ensuing altercation that you saw on the body-worn camera. So these are separate incidences that you should look at, and that's

As was clear to the jury from the instructions, a conviction in count 1 for resisting a peace officer would simply require that Horn resisted Officer Norris, but *not* that Horn used any *force or violence* in resisting.  (§ 148, subd. (a)(1); CALCRIM No. 2656.)  Horn plainly resisted Officer Norris at the outset of his interaction with the officers because he ran from the officers in the parking lot, across the street and up the embankment when they were yelling at him to stop and had activated the patrol vehicle's emergency lights and siren.  Moreover, while Horn was running away from the officers, who were in their patrol vehicle, Officer Norris had no opportunity to use excessive force against Horn.  Based on that evidence, the easiest and most likely approach for the jury to take in reaching a verdict on count 1 was to simply agree that Horn resisted Officer Norris by running away from him.  Under that analysis, it would be clear that Officer Norris was lawfully performing his duty while Horn resisted because there was no opportunity to apply force, and the jury would not be required to consider whether Officer Norris's *later* interaction with Horn involved the use of excessive force.

In contrast, the jury's task in determining whether Horn was guilty in counts 2 and 3 was not as simple.  To convict Horn of resisting an executive officer *with force or violence* in counts 2 and 3, the jury was required to focus on the part of the interaction between Horn and the officers during which they were engaged in a *physical* struggle.  The jury would thus have to grapple with whether it believed that Officer Norris and Officer Belanger used excessive force during the struggle.  From watching the body-worn camera videos, some jurors reasonably could have been concerned that Officer Norris and Officer Belanger acted unreasonably and used excessive force against Horn.  As we have already explained, one reasonable

what the evidence showed."

27

interpretation of the videos is that Horn was attempting to surrender to the officers, but he was concerned about his ability to breathe, so he delayed in getting to his stomach, and for the same reason, he panicked and tried to get up when the officers took actions that made it harder for him to breathe, such as placing weight on his back and attempting a carotid restraint.

As the jury was instructed, it was the People's burden to prove that the officers were lawfully performing their duty. (CALCRIM No. 2670.) In our view, it is reasonably probable that if a juror believed Horn might have genuinely been experiencing breathing problems, a juror could, at the least, have had doubts about whether the People met their burden to prove that officers used only a reasonable amount of force against Horn. It is especially likely that a juror would have been concerned about the officer's use of force, as defense counsel focused at length in closing argument on the issue of excessive force, which was a primary theory of the defense. (Cf. *Brown*, *supra*, 245 Cal.App.4th at pp. 154-155 [concluding that the error in failing to instruct on simple assault as a lesser included offense to § 69 was prejudicial because "[t]he use of excessive force was a primary defense theory at trial and there was substantial evidence to support it"].)

However, because the jury was not given the option of convicting Horn of the lesser included offense of simple assault in counts 2 and 3, some jurors may have decided that, despite their concerns about the officer's use of excessive force, they should convict Horn of resisting an executive officer through force and violence in counts 2 and 3 rather than acquitting him entirely. Horn was certainly not blameless in the situation with respect to how he interacted with the officers, as he ran away from the officers in the parking lot and up the embankment, and he then struggled against them for an extended period as they tried to handcuff him. If given the option to

convict of a lesser included offense, and thus still assign some blame to Horn, jurors reasonably could have concluded that Horn should be convicted of simple assault because the People did not meet their burden to prove beyond a reasonable doubt that Officer Norris and Officer Belanger used no more than a reasonable amount of force.

Thus, we conclude the trial court's instructional error was prejudicial, as it is reasonably probably that the jury would have convicted Horn of the lesser included offense of simple assault in counts 2 and 3, had it been given the option to do so, rather than convicting him of resisting an executive officer through force or violence (§ 69).

6. *The Convictions in Counts 2 and 3 Must Be Reversed With an Option for the People to Retry Those Counts or Accept a Reduction to Simple Assault*

Having concluded that the trial court prejudicially erred in failing to instruct with simple assault as a lesser included offense in counts 2 and 3, we must consider the proper remedy.

" 'An appellate court is not restricted to the remedies of affirming or reversing a judgment. Where the prejudicial error goes only to the degree of the offense for which the defendant was convicted, the appellate court may reduce the conviction to a lesser degree and affirm the judgment as modified, thereby obviating the necessity for a retrial.' " (*People v. Edwards* (1985) 39 Cal.3d 107, 118.) Thus, "[w]hen a greater offense must be reversed, but a lesser included offense could be affirmed, 'we give the prosecutor the option of retrying the greater offense, or accepting a reduction to the lesser offense.' " (*People v. Richards* (2017) 18 Cal.App.5th 549, 560-561; see also *People v. Springfield* (1993) 13 Cal.App.4th 1674,1681-1682; *Brown, supra,* 245 Cal.App.4th at pp. 155-156.)

Accordingly, we will remand with directions that the People be provided with the option of retrying counts 2 and 3. If the People elect not to do so, the convictions in count 2 and count 3 shall be reduced to convictions for simple assault (§ 240).

B.     *Horn's Challenge to the Admission of Expert Testimony on Police Officer Use of Force*

We next turn to Horn's contention that the trial court prejudicially erred in its rulings on the scope of expert testimony that Sergeant Impellizeri would be permitted to give on the subject of police officer use of force. As relevant here, over defense counsel's objection the trial court allowed Sergeant Impellizeri to (1) describe the role that the San Diego Police Department's use-of-force committee plays in developing and updating the department's use-of-force policies, including testifying that the committee receives advice from representatives of the City Attorney's office as to whether the policies need to be updated based on new legal developments; (2) testify about the department's use-of-force matrix that describes acceptable levels of force depending on the level of resistance posed by a subject; and (3) answer hypothetical questions, mirroring the facts of Horn's case, with respect to how the department's officers would be trained to respond in certain situations.

Relying primarily on the extensive discussion in *Brown, supra*, 245 Cal.App.4th at pages 156-172, regarding the type of expert testimony that may be offered to assist the jury in determining whether a police officer used excessive force, Horn contends that "Sergeant Impellizeri's testimony was inadmissible because specialized knowledge on whether Norris and Belanger used excessive force at the point [Horn] resisted was not required and invaded the province of the jury." (Capitalization & bolding omitted). Further, Horn contends the error in admitting the testimony was prejudicial

because "it is reasonably likely the jury substituted Impellizeri's expert testimony as a basis to find the officers acted reasonably."

As we will explain, because of our reversal of the conviction on count 2 and count 3, we need not, and do not, reach the issue of whether the trial court prejudicially erred in admitting Sergeant Impellizeri's testimony.

Sergeant Impellizeri's testimony about police officer use of force was relevant to the jury's finding in count one that Horn was guilty of resisting a peace officer (§ 148, subd. (a)(1)), and in counts 2 and 3 that Horn was guilty of resisting an executive officer (§ 69). Specifically, Sergeant Impellizeri's testimony on police officer use of force was relevant because for each of those counts, the People were required to prove that Officer Norris or Officer Belanger were lawfully performing a duty when Horn resisted them and thus were *not* using excessive or unreasonable force.

On counts 2 and 3 we need not decide whether Sergeant Impellizeri's testimony was improperly admitted because we are reversing the judgment on those counts with directions that the People elect either to retry Horn on those counts or accept a reduction on those counts to a conviction for simple assault. If the People elect a reduction to simple assault, Sergeant Impellizeri's testimony will not have possibly caused any prejudice that would relate to the reduced conviction for simple assault, as a conviction against Horn for simple assault does not require any evidence that the officers were *lawfully* performing their duty. If the People elect to retry Horn on counts 2 and 3, different expert testimony may be presented at that trial, which would make it premature to address the expert testimony issues in this appeal.

On count 1, we need not decide whether Sergeant Impellizeri's testimony was improperly admitted because even were we to assume that the

31

trial court erred in admitting the testimony, it is not reasonably probable that Horn would have obtained a more favorable result in count 1 had Sergeant Impellizeri's testimony on police officer use of force not been admitted. (*People v. Prieto* (2003) 30 Cal.4th 226, 247 ["The erroneous admission of expert testimony only warrants reversal if 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' "].) As we explained in our previous discussion, because no force or violence is required for the crime of resisting a peace officer (§ 148, subd. (a)(1)), the jury could convict Horn of resisting a peace officer in count 1 by focusing solely on Horn's act of resisting Officer Norris by running across the parking lot, across the street and up the embankment while the officers were yelling for him to stop and had the emergency lights and siren activated on their patrol vehicle. In such a case, there would be no question of whether Officer Norris used excessive force, as he was sitting in his patrol vehicle and did not come into physical contact with Horn until later. Thus, the jury could easily have convicted Horn in count 1 without even considering Sergeant Impellizeri's testimony on police officer use of force. Therefore, regardless of whether Sergeant Impellizeri's testimony was improperly admitted on the issue of police officer use of force,

it is not reasonably probable that the jury would have returned a different verdict on count 1 in the absence of that testimony.[13]

For these reasons, we do not reach the issue of whether the trial court erred in admitting Sergeant Impellizeri's testimony.

C.   *The Trial Court Did Not Abuse Its Discretion in Denying Discovery of Information from the Officers' Personnel Files After an In Camera Review*

Prior to trial, Horn made motions for discovery of information in the personnel files of Officer Norris and Officer Belanger.  Specifically, Horn sought evidence from the officers' personnel files, encompassing "[a]ny evidence of and complaints of:  (1) false statements in reports; (2) false claims of probable cause; (3) false testimony; (4) any other evidence of or complaints of dishonesty; and (5) excessive and unreasonable force."

The trial court reviewed the relevant personnel records in camera for the purpose of determining whether they contained such items and found no discoverable material.  On appeal, Horn requests that we review the personnel records provided to the trial court in camera to determine whether the trial court abused its discretion in determining that no information from Officer Norris's and Officer Belanger's records should be provided.  The People do not oppose the request.

---

[13]   Because we reverse the judgment on counts 2 and 3, we also need not address Horn's contention that the conviction under section 148, subdivision (a)(1) in count 1 and the conviction under section 69 in count 2 violated the rule against multiple convictions for the same conduct when one offense is necessarily included in the other.  (*Reed, supra*, 38 Cal.4th at p. 1227.)  The trial court may consider that issue in the first instance if the People successfully retry Horn on count 2 and obtain a conviction under section 69.  The issue will not arise if the People accept a reduction to simple assault because assault is not necessarily included in the offense of resisting a peace officer.

A defendant is entitled to discovery of a law enforcement officer's confidential personnel records if those files contain information that is potentially relevant to the defense. (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 537-538; Evid. Code, §§ 1043-1045.) The discovery procedure has two steps. First, the defendant must file a motion seeking such records, containing affidavits "showing good cause for the discovery or disclosure sought [and] setting forth the materiality thereof to the subject matter involved in the pending litigation." (Evid. Code, § 1043, subd. (b)(3).) If good cause is shown, the trial court then reviews the records in camera to determine whether any of them are relevant to the intended defense. (*Id.,* § 1045, subd. (b).) A trial court's decision on the discoverability of material in police personnel files is reviewable under an abuse of discretion standard. (*People v. Breaux* (1991) 1 Cal.4th 281, 311-312.)

Following established procedure, "the records have been made part of the record on appeal but have been sealed, and appellate counsel for defendant have not been permitted to view them." (*People v. Hughes* (2002) 27 Cal.4th 287, 330; see also *People v. Mooc* (2001) 26 Cal.4th 1216, 1232.) We have independently examined the personnel files in camera. Based on that review, we conclude that the trial court did not abuse its discretion in ruling that no information from those files should be disclosed.

## DISPOSITION

Horn's convictions in count 2 and count 3 for violating section 69 are reversed. After remittitur, the People may elect to retry Horn on the offenses charged in count 2 and count 3 pursuant to the procedure after remand in section 1382, subdivision (a)(2). If the People do not elect a retrial, the trial court is directed to enter judgment on count 2 and count 3 for the lesser

included offense of simple assault (§ 240).  The trial court shall then resentence Horn.  In all other respects, the judgment is affirmed.


IRION, J.

I CONCUR:


McCONNELL, P. J.


I CONCUR IN THE RESULT:


HUFFMAN, J.